IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| Jennifer Knight<br>c/o Gottesman & Associates, LLC<br>404 East 12th Street, First Floor<br>Cincinnati, Ohio 45202,<br><br>    Plaintiff,<br><br>v.<br><br>City of Columbus<br>c/o Zach Klein, Esq.<br>77 North Front Street<br>Columbus, Ohio 43215,<br><br>Elaine R. Bryant, Chief of Police<br>Columbus Division of Police<br>120 Marconi Boulevard<br>Columbus, Ohio 43215-0009,<br><br>Lashanna Potts, First Assistant Chief of Police<br>Columbus Division of Police<br>120 Marconi Boulevard<br>Columbus, Ohio 43215-0009,<br><br>Douglas Sarff<br>Department HR Manager<br>City of Columbus<br>c/o Zach Klein, Esq.<br>77 North Front Street<br>Columbus, Ohio 43215,<br><br>Kelly Lee<br>City of Columbus<br>c/o Zach Klein, Esq.<br>77 North Front Street<br>Columbus, Ohio 43215,<br><br>Andrew Ginther<br>City of Columbus<br>c/o Zach Klein, Esq.<br>77 North Front Street<br>Columbus, Ohio 43215, | Case No.<br><br>Judge<br><br>VERIFIED COMPLAINT FOR INJUNCTIVE RELIEF, COMPENSATORY DAMAGES AND PUNITIVE DAMAGES WITH JURY DEMAND ENDORSED HEREON |

Robert Clark
City of Columbus
c/o Zach Klein, Esq.
77 North Front Street
Columbus, Ohio 43215,

and

Ned Pettus
City of Columbus
c/o Zach Klein, Esq.
77 North Front Street
Columbus, Ohio 43215,

      Defendants

      Plaintiff, by and through counsel, for her verified complaint, states as follows:

## Introduction

      1.      The Defendants are trying to force Plaintiff to resign and/or fabricate a case of misconduct against her to justify termination of her employment because she has been an outspoken critic of Defendants' unlawful, racist, and corrupt policies and practices. In furtherance of their unlawful scheme, Defendants have forced Plaintiff to endure discriminatory and disparate treatment including, but not limited to, subjecting her to demeaning, demoralizing, intrusive, and invasive "Direct Observed Collection" urinalysis without any individualized suspicion. This Court must act immediately and decisively to enjoin Defendants and prevent further similar transgressions.

## Parties

      2.      Plaintiff is a female, white, 55-year-old, Deputy Chief for the Columbus Division of Police and for at all times relevant hereto has been a resident of the state of Ohio.

      3.      Defendant, City of Columbus is a duly chartered municipality and city within the State of Ohio and, in that capacity, maintains the Columbus Division of Police.

2

4. Elaine R. Bryant is the Chief of the Columbus Division of Police and has oversight, control, and supervision over the actions complained of herein.

5. Lashanna Potts is the Assistant Chief of the Columbus Division of Police and has oversight, control, and supervision over the actions complained of herein.

6. Douglass Sarff is the Director of the Human Resources Department for the City and has oversight, control and supervision over the actions complained of herein.

7. Kelly Lee is the individual directly responsible for managing and implementing the drug and alcohol testing program for the City of Columbus.

8. Andrew Ginther is the Mayor of the City of Columbus, responsible for, among other things, executive and administrative functions of the City. He has held that position at all times relevant hereto.

9. Ned Pettus was the Safety Director of the City of Columbus, responsible for, among other things, supervision of the Police Department. For purposes of this Complaint, he held that position from 2016 by and through Aug, 2021 when he retired.

10. Robert Clark is the Safety Director of the City of Columbus, responsible for, among other things, supervision of the Police Department. He has held that position since September 3, 2021.

**Venue & Jurisdiction**

11. Plaintiff is or will be asserting claims for gender and race discrimination and retaliation under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq*.,[1] and the Ohio laws against discrimination as codified in R.C. Chap. 4112.

---

[1] Plaintiff has filed EEOC charges as of July 20, 2021; those charges have been pending for more than a year, and, while Plaintiff has requested a right to sue letter, no such right to sue letter has presently issued. Thus, even she is not, at present, asserting those claims, but intends to do so as soon as the letter issues, and she

3

12. Plaintiff is asserting claims for deprivation of her civil rights under 42 U.S.C.§1983.

13. This Court has jurisdiction by virtue of 28 U.S.C. §§ 1331 (federal question), §1343 (civil rights), and 1367 (supplemental jurisdiction).

14. Plaintiff seeks declaratory, equitable, and injunctive relief pursuant to 28 U.S.C. §§ 2201; 2202; and the common law of the State of Ohio.

15. Plaintiff seeks compensatory damages under 42 U.S.C.§1981, Title VII, and the statutory and common law of the State of Ohio.

16. Plaintiff seeks costs and attorneys' fees pursuant to 42 U.S.C. § 1988; Title VII, 42 U.S.C. § 2000e-5(k); Fed. R. Civ. P. 54; and the statutory and common law of the State of Ohio.

17. In March of 2021, Plaintiff initiated a charge of discrimination with the EEOC regarding the facts herein alleged.

18. Due to Covid-19 and administrative backlog the EEOC has failed to issue a Notice of Suit Rights letter and Plaintiff's Title VII claims alleged herein are not ripe until the EEOC does so.

19. Venue lies in this forum pursuant to 28 U.S.C. § 1391(b) and S.D. Civ. R. 82.1 because the claims arose in Franklin County, Ohio, where Defendants engaged in prohibited conduct and where the Division of Police and Department of Public Safety are located.

**Facts**

---

intends to amend her complaint to assert those claims.though the Title VII claims arise out of a common nucleus of operative facts from the other claims Plaintiff asserts,

20. In December, 2016, Plaintiff had been the Commander of the Internal Affairs Bureau (IAB) for the Columbus Division of Police for 2.5 years.

21. In December, 2016, Plaintiff was wrongfully accused of making statements to another supervisor about an internal investigation involving Lt. Melissa McFadden, a female black, and Officer Falacia Dragin.

22. Lt. McFadden complained to then Chief Jacobs alleging misconduct by the Plaintiff and in February, 2017, at the insistence of Jacobs and Pettus, and with the knowledge and consent of Ginther, Plaintiff was removed from her position in IAB without explanation and reassigned as Zone 4 Commander while an internal investigation was conducted regarding Lt. McFadden's allegations.

23. In March of 2017, the internal investigation was completed, Lt. McFadden's allegations were found to be without basis and yet Plaintiff was not moved back to her position as IAB Commander, at the direction of Jacobs and Pettus, and with the knowledge and consent of Ginther.

24. In April of 2017, several black police officers complained regarding Lt. McFadden alleging she created a racially hostile work environment within the Division of Police generally and an IAB investigation into those allegations was initiated.

25. Lt. McFadden was relieved of duty by Chief Jacobs during the investigation which lasted throughout 2018.

26. During the investigation into her misconduct, Lt. McFadden made frequent public appearances and gave media interviews during which she targeted Plaintiff and Commander Rhonda Grizzell and falsely alleged they were corrupt and racist. Pettus and Ginther were aware of these actions.

5

27. Despite repeated requests from Plaintiff, the Division of Police refused to act to stop Lt. McFadden from disparaging her and the Division despite clear rules, directives, orders, and policies prohibiting such conduct.

28. In February, 2019, IAB concluded its exhaustive investigation (Investigation No. 201703-1015) into Lt. McFadden and sustained all the complaints against her relative to her creating a racially discriminatory and hostile environment.

29. Based on the results of the investigation referenced in the preceding paragraph, Chief Jacobs recommended discipline of Lt. McFadden to include a 240-hour suspension, termination, or demotion to police officer.

30. In August, 2018, Safety Director Ned Pettus overruled the Chief's recommendations and determined that the Division of Police had failed to meet their burden of proof regarding Lt. McFadden's conduct, thereby tacitly approving and perpetuating her racially discriminatory and divisive conduct.

31. Safety Director Pettus' decision referenced in the preceding paragraph is an example of the disparate treatment of and double standard for Division personnel whereby certain black officers are permitted to violate rules, regulations, policies and orders and others Division personnel are not.

32. In February, 2019, Thomas Quinlan was appointed interim Chief, indicated he wanted Plaintiff to be appointed as a Deputy Chief and appointed her as an interim Deputy Chief.

33. At the time Plaintiff was being considered for promotion to Deputy Chief in February, 2019, she had a meeting with then Safety Director Ned Pettus and H.R. Director

6

Doug Sarff during which Pettus and Sarff both voiced concern that the male Deputy Chiefs would not treat her well and questioned her ability to operate in that environment.

34. Ultimately, in August, 2019, Greg Bodker was appointed to the position of Deputy Chief even though he had no experience at the rank, less tenure and no advanced degree and Plaintiff remained appointed as an interim Deputy Chief. This was with the knowledge and at the direction of Pettus and Ginther.

35. During her service as an interim Deputy Chief, Plaintiff was regularly undermined and unfairly criticized by the other Deputy Chiefs. This was with the knowledge and at the direction of Pettus and Ginther.

36. In October, 2019, Plaintiff filed an official complaint against Deputy Chief Bash with then EEO Director Kathleen Bourke regarding his repeated and successful efforts to undermine Plaintiff's authority in the Division, which was substantially motivated by Plaintiff's sex and gender, and Bash's hostility to women in command positions. Pettus and Ginther were aware of these charges, and directed that they not be meaningfully investigated.

37. The EEO Complaint referenced in the preceding paragraph was not meaningfully investigated and/or, the minimal investigation that was conducted was engineered to ensure an outcome that protected Deputy Chief Bash.

38. In November, 2019, a Deputy Chief circulated an email criticizing Plaintiff for appearing in a photo in the Columbus Dispatch without her police hat, a common occurrence for other Division personnel. This was, yet again, conduct substantially motivated by Plaintiff's sex and gender.

7

39. Chief Quinlan ordered Deputy Chief Kuebler to retract his email criticizing the Plaintiff.

40. In April 2020, Plaintiff was advised that if she was selected for promotion to Deputy Chief, she would have to attend leadership training, a condition of promotion that was never applied to male Deputy Chiefs, despite her record of attendance at several leadership programs. This was with the knowledge and at the direction of Pettus and Ginther.

41. In May of 2020, Plaintiff was finally promoted to Deputy Chief.

42. Despite her promotion, Plaintiff's autonomy and authority has been hampered by the Chief Quinlan's order that Plaintiff bring command issues before the executive staff for review and approval, a condition not imposed and never imposed on male Deputy Chiefs. This was with the knowledge and at the direction of Pettus and Ginther.

43. In June of 2020, City Councilmember Emmanuel Remy publicly stated the racial makeup of those currently serving as Deputy Chiefs, including the plaintiff, was problematic and needed to be changed. Councilmember Remy publicly referred to the Plaintiff as merely a "smidge of diversity."

44. As a female Deputy Chief, from May, 2020, to the present, Plaintiff was subjected to disparate treatment as compared to the male Deputy Chiefs including, but not limited to, being required to attend to additional training, being required to seek approval of command decisions, being criticized without basis, and having her command authority undermined by her male counterparts. This disparate treatment was pervasive and ongoing, from May, 2020, to the present. This was with the knowledge and at the direction of Pettus and Ginther.

8

45. In September, 2020 it became public knowledge that Lt. McFadden wrote and offered for sale a book, titled *Walking the Thin Black Line*, in which she falsely disparaged Plaintiff by name, falsely disparaged the Division of Police and otherwise violated rules, regulations, and orders governing the conduct of Division personnel.

46. In September, 2020, Lt. McFadden was giving regular interviews with the media regarding her book.

47. Lt. McFadden's conduct attracted the attention of the local media, the Division Command Staff and the Columbus City Attorney's Office and there was an ongoing discussion between various authority figures regarding what, if anything, could or should be done about the Lt. McFadden's dishonesty and flagrant violations of Division policies. The concerns regarding McFadden reached Ginther and Pettus.

48. As pressure grew to initiate an investigation into Lt. McFadden's obvious misconduct, Chief Quinlan was evaluating whether the investigation would be done internally by IAB or outsourced to a law firm. Quinlan consulted and obtained the approval of Pettus and Ginther for this.

49. On or about October 21, 2020, Chief Quinlan, at the direction of Mayor Ginther and Safety Director Pettus, directed Plaintiff to prepare a letter outlining Lt. McFadden's false statements and violations of Division policies so that an investigation could be commenced. Plaintiff, as opposed to other Deputy Chiefs, was selected to author the letter because Chief Quinlan, Pettus, and Ginther all knew that there was a high likelihood that Lt. McFadden would retaliate, that Lt. McFadden would likely raise race issues, all knew that this was a unfavorable and unenviable task, and all of them wanted the Plaintiff to bear the

brunt of any aftermath from the letter, rather than Plaintiff's male counterparts, and certainly both Pettus and Ginther did not want to be held responsible.

50. On December 2, 2020, Columbus EEO Deputy Director Bourke reviewed Plaintiff's letter regarding Lt. McFadden and rejected it as inadequately detailed. The letter was returned to IAB requesting additional details. Again, Pettus and Ginther were informed of this development and directed the letter's revision.

51. In response, Plaintiff was again directed by Deputy Chief Bash, the Deputy Chief in charge of IAB, to prepare an exhaustingly detailed complaint regarding Lt. McFadden's conduct, her book, and her numerous violations of Division policies. Plaintiff, as opposed to other Deputy Chiefs, was selected to author the letter because Deputy Chief Bash, Pettus, and Ginther, all knew that Lt. McFadden would likely retaliate, this was an unfavorable and unenviable task, and they wanted the Plaintiff to bear the brunt of any aftermath from the letter, rather than Plaintiff's male counterparts or Pettus or Ginther.

52. At that time, Plaintiff expressed her concern that Lt. McFadden would retaliate against her for preparing a complaint. Chief Quinlan dismissed these concerns, even though he knew that Lt. McFadden would likely retaliate, because he, Ginther, and Pettus had all already decided that Plaintiff, rather than her male counterparts, would be saddled with McFadden's retaliation and they decided Plaintiff would be the scapegoat if it came to it.

53. After Plaintiff submitted a detailed complaint outlining the many ways Lt. McFadden had violated Division rules, policies, regulations and order, Lt. McFadden filed a complaint alleging Plaintiff and others retaliated against her for First Amendment protected expression. Ginther and Pettus then decided that they would execute on their scheme to make Plaintiff the scapegoat.

10

54. At the direction of Ginther and Pettus, Lt. McFadden's complaint was investigated by outside counsel, Marc Fishel, Esq.

55. The IAB investigation into Lt. McFadden's misconduct was immediately halted and terminated by Ginther and Pettus in early 2021.

56. Mr. Fishel's investigation was pretextual and the outcome was predetermined.

57. In further point of fact, Fishel "completed" his investigation no less than three times, the first time on September 21, 2021, again on January 3, 2022, and again on May 31, 2022. Each time, Fishel was asked to do more work to try to justify disciplinary action, namely the termination of Plaintiff's employment, because in actuality, such termination was or would be on the basis of the Plaintiff's sex and gender. Mayor Ginther. Safety Director Clark, Chief Bryant, and Assistant Chief Potts want to terminate the employment of Plaintiff, on the basis of her race, sex and gender, and in furtherance of efforts to placate McFadden, and each was involved in the ongoing efforts to harass Plaintiff.

58. Mr. Fishel's findings and conclusions were, in each instance, legally flawed and legally unsupportable.

59. It is now obvious that the direction provided to Plaintiff, by the Safety Director's office and ranking members of the Division, to draft a complaint against Lt. McFadden was a set up from the outset.

60. In October of 2021, Plaintiff applied for an open position at the rank of Assistant Chief. All potential candidates except Plaintiff, including those with significantly less experience, rank and education were provided with an interview opportunity. This was further retaliation against the Plaintiff on the basis of her sex and gender. This lack of

opportunity was motivated by the Plaintiff's gender, and the discriminatory actions of Ginther and Clark.

62. Defendants Bryant, Potts, Ginther, and Clark, are and have been orchestrating a plan to try and get rid of Plaintiff for complaining about the racial double standard in the Division of Police, the discrimination against her as a female Deputy Chief and the double standard applied to Lt. McFadden's repeated, unapologetic violation of Division rules, policies, regulations, and orders.

62. On November 15, 2021, Plaintiff was notified to appear for a routine drug/alcohol test.

63. As a member of the executive command staff, it was common practice for Plaintiff and others to reschedule drug/alcohol tests to comport with their schedule.

64. Occasionally, members of the command staff selected for drug testing would simply advise the testing coordinator they were unavailable, rather than rescheduling, and the coordinator would simply move down the list to the next selectee.

65. Due to work commitments that prevented her appearance, Plaintiff inadvertently failed to appear for her drug/alcohol test at the designated time.

66. Although Plaintiff immediately tried to reschedule, she was not permitted to do so, as male colleagues had been routinely permitted to do in the past.

67. Rather than allow Plaintiff to reschedule (which was common practice), Kelly Lee, Doug Sarff, and Chief Bryant decided to charge Plaintiff with a "positive test." In point of fact, Plaintiff was not positive, but her failure to appear was treated as such.

68. As a result of the "positive test", on November 18, 2021, Plaintiff was relieved of duty, required to turn in her badge and gun and had her police powers suspended by Chief Bryant, and at the further direction and approval of Ginther and Clark.

69. Plaintiff, at her own expense, obtained private urinalysis in the days following the November 15, 2021 incident, which demonstrated an absence of any drugs, and provided a copy of the same to Chief Bryant, Kelly Lee, and Doug Sarff. Both Ginther and Clark were informed of this development.

70. Plaintiff was required to meet with the EAP Director and then she was required to meet with a drug/alcohol counselor prior to her reinstatement.

71. Plaintiff was forced to undergo a Return to Duty urinalysis which required her to fully disrobe and be observed urinating into the receptacle.

72. On December 2, 20021, Plaintiff was restored to full duty.

73. The City has a Drug Free Workplace Policy in effect that differentiates between "Direct Observed Collection"[2] and "Monitored Collection."[3]

74. As a result of the alleged "positive test," Plaintiff is subjected to ongoing and continuing "Direct Observed Collection" which requires Plaintiff to fully disrobe and be fully observed, naked, urinating into a cup. This requirement was imposed at the direction of Ginther, Clark, Bryant, Sarff, Potts, and Lee.

---

[2] A direct observation collection is when a collector at a test site watches the employee urinate into a collection container and checks for prosthetic or other devices designed to carry "clean" urine or urine substitutes in accordance with federal standards. If the collector is not the observer, the collector must instruct the observer about the appropriate procedures for observing the employee in accordance with federal standards. The observer must be the same gender as the employee's identified gender.

[3] A monitored collection is when a monitor accompanies the donor into the restroom, and secures the restroom to ensure that no one else can enter during the collection process. The monitor remains in the restroom, but outside the stall, while the donor is providing the specimen.

75. Plaintiff has never had a urine test return a positive result for alcohol and/or drugs.

76. Plaintiff has never been accused of being under the influence of alcohol or drugs while on duty.

77. Plaintiff was investigated by IAB for the missed drug test (I.A.B. Database # 202112-1029)

78. On May 3, 2022, IAB determined that the allegation that Plaintiff failed to cooperate with a random drug test resulting a in a positive test result was **UNFOUNDED**.

79. Notwithstanding IAB's determination that the alleged positive test result was **UNFOUNDED**, Plaintiff is still subjected to "Direct Observed Collection" on an ongoing basis.

80. Plaintiff has been subjected to "Direct Observed Collection" drug testing on November 29, 2021, April 4, 2022, May 3, 2022, and July 26, 2022, and is currently in a rotation whereby she will continue to be subjected to ongoing "Direct Observed Collection," which, again, is the requirement to be fully naked, and then be observed urinating into a cup, despite the lack of any articulable or individualize suspicion that she has or does use alcohol or drugs.

**First Cause of Action – Violation of 42 U.S.C. §1983 (Equal Protection – Sex and Gender - Ginther, Clark, Pettus, Bryant, Potts, Sarff, and the City of Columbus)**

81. Plaintiff incorporates the preceding allegations by reference.

82. Defendants have taken a number of adverse employment actions against the Plaintiff, as set forth in Paragraphs 20 through 80 on the basis of her sex and gender. Further, the treatment of the Plaintiff has constituted and continues to constitute a pervasive and ongoing hostile work environment, on the basis of the Plaintiff's sex and gender.

83. Defendants have violated Plaintiff's clearly established equal protection rights by discriminating against her based on her gender and sex in violation of 42 U.S.C. §1983.

84. The foregoing violations on the Plaintiff's clearly established equal protection rights have caused her damages, in an amount exceeding $25,000 to be proven at trial. Further, the foregoing violations on the Plaintiff's clearly established equal protection rights were motivated by evil motive or intent on the part of the Defendant, or involves reckless or callous indifference to the federally protected rights of the Plaintiff, warranting the imposition of punitive damages.

85. The City of Columbus is further liable for the compensatory damages complained of herein, because these decisions and actions were ratified and directed at the highest levels of the City and Police Department, thus constituting an official municipal policy and unofficial customs.

### Second Cause of Action – Violation of 42 U.S.C. §1983 (Equal Protection – Race - Ginther, Clark, Pettus, Bryant, Potts, Sarff, and the City of Columbus)

86. Plaintiff incorporates the preceding allegations by reference.

87. Defendants have taken a number of adverse employment actions against the Plaintiff, as set forth in Paragraphs 20 through 80 on the basis of her race. Further, the treatment of the Plaintiff has constituted and continues to constitute a pervasive and ongoing hostile work environment, on the basis of the Plaintiff's race.

88. Defendants have violated Plaintiff's clearly established equal protection rights by discriminating against her based on her race in violation of 42 U.S.C. §1983.

89. The foregoing violations on the Plaintiff's clearly established equal protection rights have caused her damages, in an amount exceeding $25,000 to be proven at trial. Further, the foregoing violations on the Plaintiff's clearly established equal protection rights

were motivated by evil motive or intent on the part of the Defendant, or involves reckless or callous indifference to the federally protected rights of the Plaintiff, warranting the imposition of punitive damages.

90. The City of Columbus is further liable for the compensatory damages complained of herein, because these decisions and actions were ratified and directed at the highest levels of the City and Police Department, thus constituting an official municipal policy and unofficial customs.

### Third Cause of Action – Violation of 42 U.S.C. §1983 (Fourth Amendment - Ginther, Clark, Bryant, Potts, Sarff, Lee, and the City of Columbus)

91. Plaintiff incorporates the preceding allegations by reference.

92. Defendants have violated Plaintiff's clearly established Fourth Amendment rights by subjecting her to "Direct Observed Collection" mandatory urinalysis without individualized suspicion in violation of 42 U.S.C. §1983.

93. By subjecting Plaintiff to past and future "Direct Observed Collection" urinalysis, Defendants are causing Plaintiff irreparable harm including, but not limited to, embarrassment, invasion of her privacy, humiliation, degradation, pain, suffering, emotional distress and lost peace of mind.

94. The foregoing violations on the Plaintiff's clearly established Fourth Amendment rights have caused her damages, in an amount exceeding $25,000 to be proven at trial. Further, the foregoing violations on the Plaintiff's clearly established Fourth Amendment rights were motivated by evil motive or intent on the part of the Defendant, or involves reckless or callous indifference to the federally protected rights of the Plaintiff, warranting the imposition of punitive damages.

16

95. The City of Columbus is further liable for the compensatory damages complained of herein, because these decisions and actions were ratified and directed at the highest levels of the City and Police Department, thus constituting an official municipal policy and unofficial customs.

Wherefore, Plaintiff demands judgment against Defendants for compensatory, special, and punitive damages, injunctive relief, costs of this action, reasonable attorneys' fees and any such other relief as this Court deems just.

Respectfully submitted,

*/s/Zachary Gottesman*
Zachary Gottesman (0058675)
Trial Attorney for Plaintiff
Gottesman & Associates, LLC
404 East 12th Street, First Floor
Cincinnati, Ohio 45202
513/651-2121
zg@zgottesmanlaw.com

/s/Christopher Wiest
Christopher Wiest (0077931)
25 Town Center Blvd, Ste. 104
Crestview Hills, KY 41017
513/257-1895
chris@cwiestlaw.com

*/s/Robert J. Thumann*
Robert J. Thumann (0074975)
Crehan & Thumann, LLC
404 East 12th Street, Second Floor
Cincinnati, Ohio 45202
Tel.:   513/381-5050
thumann@ctlawcincinnati.com

17

**Jury Demand**

Plaintiff demands a trial by Jury on all issues so triable.

*/s/Zachary Gottesman*
Zachary Gottesman (0058675)
Trial Attorney for Plaintiff

## VERIFICATION

Pursuant to 28 U.S.C. 1746, I, Jennifer Knight, declare under penalty of perjury that I have read the foregoing Verified Complaint, that I am competent to testify in this matter, that the facts contained therein are true and correct, and are based information personally known and observed by me.

Executed on: Aug. 5, 2022

*Jennifer Knight*
Jennifer Knight